IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID REY, | No. CV 10-01970 SI |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| C&H SUGAR CO., INC.; AMERICAN SUGAR REFINING, INC.; and DOES 1-100, | |
| Defendants. | |

On October 5, 2012, the Court heard argument on defendants' motion for summary judgment. The Court requested and received supplemental briefing on issues raised in oral arguments. Having carefully considered the arguments of counsel and the papers submitted, the motion is GRANTED, for the reasons set forth below.

**BACKGROUND**

Plaintiff David Rey was hired by defendant C&H Sugar Co., Inc. ("C&H") as a Warehouse Supervisor in March 2007. He supervised personnel in the loading of trucks with pallets of sugar for shipment. C&H fired him a year and a half later in October 2008. Rey filed a complaint in April 2010 against defendants C&H Sugar Co., Inc., American Sugar Refining, Inc., and Does 1-100 (collectively "C&H"), alleging, *inter alia*, that his termination was the result of age discrimination and was done in retaliation for his complaint of age discrimination to HR personnel. The following causes of action remain contested by the parties: (1) age discrimination; (2) retaliation; (3) wrongful termination; (4) failure to prevent discrimination and retaliation; and (5) intentional infliction of emotional distress.

### 1.    Early Performance

Plaintiff Rey was interviewed twice by C&H before he was hired as a Warehouse Supervisor on March 19, 2007.  Decl. of David Rey in Supp. of Opp'n to Mot. for Summ. J. ("Rey Decl.") ¶ 2. He had many years of previous experience as a supervisor in large warehouses. *Id.*  At C&H, his main responsibility was to supervise a shift of union employees who loaded the trucks with sugar pallets. *Id.* at ¶ 3.  This included ensuring employee compliance with company policies, preparing shift reports, checking outgoing shipments, checking employee time clocks, and monitoring inventory. *Id.*

Plaintiff Rey's immediate supervisor was Warehouse Manager Don White, and White's supervisor was Plant Manager Ray Fairman. *Id.* at ¶ 4. In September 2007, White gave Rey his first performance evaluation, and the summary appraisal rating was "Needs Improvement: Indicates performance that does not meet the established requirements of the position. . . . *appropriate for employees that are new to a position where there is need for continual learning to get up to speed.*" *Id.*, Ex. B at 2 (emphasis in original). This rating is the lowest of three possible ratings. White testified that he did not remember if Rey was performing substantially more poorly than the other Warehouse Supervisors, but he did remember that Rey showed a lot of empathy for the union workers he supervised. Kenneth N. Frucht's Decl. in Supp. of Pl.'s Supplemental Papers in Supp. of Opp'n to Defs.' Mot. for Summ. J., Ex. B ("White Dep.") 58, 78.

Assistant Warehouse Manager Cesar Landa initially trained Rey. Decl. of Cesar Landa in Supp. of Mot. for Summ. J. ("Landa Decl.") ¶ 5. Landa observed that Rey had "difficulties in learning and performing his job" and informed White of these problems in October 2007. *Id.* at ¶¶ 6-10. At White's instruction, Landa began to record these examples of poor performance in a memo that contained twenty incidents from October 8, 2007 to December 13, 2007. *Id.* at ¶ 10. The deficiencies that Landa noted included such issues as a failing to complete tasks in a timely fashion, neglecting to maintain coverage when employees called in sick, failing to setup materials for the next shift, and leaving shipments waiting to be loaded or unloaded. *Id.* Furthermore, from March 1 to March 15, Landa documented Rey's failure to meet the standard of loading 40 trucks per shift; he loaded 35 trucks on 4 days, fewer than 35 trucks on 7 days, and fewer than 30 trucks on 4 days. *Id.* at ¶ 14.

On October 27, 2007, Landa spoke with Fairman about Rey's deficient performance. *Id.* at ¶

2

11. Rey opposition briefing provides explanations or refutations for most of these performance deficiencies, and defendants make counter-arguments. *See* Rey Decl. at ¶ 11; Reply at 2-6.

Warehouse Superintendent Jake Peterson was also responsible for training Rey. Decl. of Jake Peterson in Supp. of Mot. for Summ. J. ("Peterson Decl.") ¶¶ 2-3. Peterson observed that Rey had trouble learning on the job. *Id.* at ¶¶ 3-4. Later on, Peterson observed that Rey's shift employees did not respect him, and Rey would often fail to communicate issues to the next supervisor. *Id.* at ¶ 6. In December, Peterson prepared a memo to Landa outlining a particular mistake Rey had made: after Peterson carefully explained how to fulfill the order correctly, Rey loaded it incorrectly. *Id.* at ¶ 5. Rey asserts that Peterson had set up the order incorrectly. Rey Decl. ¶ 11.

### 2.  Alleged Discriminatory Actions

On March 4, 2008, C&H hired Lemmie Adams to replace White as the Warehouse Manager. Rey Decl. at ¶ 12. Rey alleges that at a weekly supervisors meeting on March 17, 2008, Adams gestured towards him and said, "Hell . . . you're old. We can all see that." *Id.* at ¶ 14. At the time, Rey was fifty-four years old. Adams is two years older than Rey. Decl. of Jill Nohl in Supp. of Mot. for Summ. Judgement ("Nohl Decl.") ¶¶ 4-5.

On March 21, 2008, Adams and Landa met with Rey to discuss his poor performance, and specifically his failure to meet the standard of loading 40 trucks per shift. Rey Decl. at ¶ 15; Landa Decl. at ¶ 14. As a result, Adams reassigned Rey to work in inventory for two weeks and receive further training. Rey Decl. at ¶ 15.

On March 24, 2008, Rey met with HR Manager Francine Cronin and told her about the "you're old" comment. *Id.* at ¶ 16. He also told her about his reassignment to inventory and explained that he believed he was being singled out based on his age. *Id.* Cronin undertook an investigation of the incidents, and interviewed Adams and eight of the ten other employees who were at the meeting. Kenneth N. Frucht's Decl. in Supp. of Opp'n to Mot. for Summ. J. ("Frucht Decl."), Ex. B ("Cronin Dep.") 80-91. In her report, Cronin related that none of the witnesses confirmed Adams's remarks about Rey's age. *Id.*, Ex. E at 2. She also noted that six of the eight warehouse supervisors were over forty years old. *Id.*

### 3.  Subsequent Performance Issues

After Adams's alleged "you're old" comment, various employees at C&H continued to document Rey's poor performance, and the following examples are undisputed. In April 2008, Landa asked Rey to repaint the warehouse sanitation lines, and found that he did a poor job. Rey Decl. at ¶ 23. On May 7, Landa informed Adams that Rey had only loaded 29 trucks on his shift, while another superintendent (who had only been working two months) had loaded 39 trucks. On May 22, Landa complained that Rey authorized a shift change and a bank day without informing the day shift superintendent. *Id.* at ¶ 27. On May 23, Rey failed to bring in pallets from outside during his shift as instructed by Landa, which required a worker to be kept overtime. *Id.* at ¶ 29. On June 10, Landa sent Rey an email remonstrating him for his messy work station; a drum of molasses had spilled, and Rey did not clean it up immediately. *Id.* at ¶ 33.

Rey also points to instances where he performed well at work. In December, Rey was included on an email that praised the recent shipping improvements. *Id.*, Ex. D. During one week in May, his team loaded more than any other shift. *Id.* at ¶ 42. In July, a supervisor emailed Rey and four others praising their work during the holiday week. *Id.*, Ex. R.

On June 3, 2008, Adams gave Rey a written performance review. *Id.* at ¶ 31. Each category was marked "marginal" or "unsatisfactory," and all goals were marked "Not Achieved." *Id.* On July 22, Adams placed Rey on a Performance Improvement Plan. *Id.* at ¶ 34. The plan outlined six specific areas for improvement, including performing regular inventory counts, physical maintenance of his warehouse area, time clock management of his shift employees, meeting productivity standards, and communicating shift issues. Landa Decl., Ex. H.

On September 3, 2008, Inventory Clerk Louie Bortolussi did a random audit of Rey's station, and found that of the fourteen locations with inventory, only one location had the correct count of inventory. Landa Decl. at ¶ 22, Ex. 1. In October 2008, Landa also documented two specific instances when Rey failed to correct his employee's time-punch errors. *Id.* at ¶ 24; Landa Decl., Ex. K. Rey was terminated on October 31, 2008. Rey Decl. at ¶ 43. He was replaced by Stacy Wise, who was in his thirties at the time. *Id.* at ¶ 15.

4

**LEGAL STANDARD**

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *See T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49 (2d Cir. 1985); *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**1.    Age Discrimination**

In employment discrimination cases, the Court applies the three-step analysis framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff must make a *prima facie* showing of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *Id.* Finally, the burden shifts back to the plaintiff to show that the

1 employer's proffered explanation is merely a pretext for a discriminatory motive. *Id.* at 804.

### A.     *Prima Facie* Case

A plaintiff can make out a *prima facie* case of age discrimination by showing that: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 604 (9th Cir. 2004). The Ninth Circuit has repeatedly emphasized that a plaintiff's burden in establishing a *prima facie* case of discrimination is "minimal." *Coghlan v. American Seafoods Co. LLC.*, 413 F.3d 1090, 1094 (9th Cir. 2005). If the plaintiff is over forty years of age, he is part of the protected class. *See* 29 U.S.C. § 623(a); *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).

Plaintiff Rey is a member of a protected class because he was fifty-five years old when he was fired from C&H. He was qualified for his position based on many years of experience. Rey experienced an adverse employment action when he was fired from his job. The circumstances giving rise to an inference of age discrimination are that his supervisor said "Hell, you're old" and that he was replaced by a younger employee. *See Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148-49 (9th Cir. 1997) (manager's comment that co-worker was a "dumb Mexican" could be evidence of discrimination against plaintiff and satisfied *prima facie* case). Thus, the Court finds that Rey has met his burden in establishing a *prima facie* case for age discrimination.

### B.     **Legitimate Reason for Termination**

C&H offers numerous examples of Rey's poor performance to show that it had a legitimate reason for terminating Rey. His first performance evaluation by White was an overall assessment of "Needs Improvement." Landa and Peterson both documented instances of poor performance before Adams was even hired by C&H. After Adams was hired, Landa continued to document examples of Rey's poor performance. Adams gave Rey a performance evaluation in which all categories were "marginal" or "unsatisfactory." After continued documentation of poor performance, Adams placed

6

Rey on a Performance Improvement Plan. Subsequently, Bortolussi found Rey had incorrect inventory counts during a random audit, and Landa documented two specific examples of Rey's employees' time-punch errors. Notably, inventory count and employee time-punch errors were two of the six areas for improvement on the PIP. Thus, the Court finds that defendants have met their burden to articulate a legitimate, non-discriminatory reason for the adverse employment action.

### C. Pretext

If the employer sustains its burden, the presumption of discrimination disappears, and the plaintiff must show that the proffered reasons are pretexts for discrimination. *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 356 (2000). "Although a plaintiff may rely on circumstantial evidence to show pretext, such evidence must be both specific and substantial." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). A plaintiff's subjective personal judgments of his competence alone do not raise a genuine issue of material fact. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1285 (9th Cir. 2000). Additionally, a previous supervisor's good review is not enough to show pretext. *See e.g.*, *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002) ("Different supervisors may impose different standards of behavior, and a new supervisor may decide to enforce policies that a previous supervisor did not consider important.").

To show pretext, Rey broadly asserts that the accusations of his poor performance were fabricated as a result of the discrimination against him. Opp'n at 16-17. As evidence of fabrication, he cites to examples indicating his good performance, such as emails from different supervisors to Rey and others praising their work, and his excellent week in May. He also cites to White's opinion that he was performing no worse than the other Warehouse Supervisors when White left C&H. Plaintiff suggests that Landa's memo detailing Rey's poor performance was fabricated because Landa could not produce the original digital version for forensic analysis to show its when it was created. However, as Landa explained and emails from HR personnel corroborate, Landa's work computer was stolen and he lost the files on that computer. Supplemental Decl. of Matthew A. Goodin, Ex. A. Plaintiff has no evidence that Landa's memo was fabricated. The fact that one manager early on did not think that Rey was a poor performer, or that Rey was included in general emails praising the supervisors for specific instances of

7

good performance, does not mean that C&H fabricated its reasons for firing Rey.

Rey offers excuses for many of the examples of his poor performance. However, Rey does not dispute the following of instances of his poor performance: his first appraisal rating was "Needs Improvement," his failures to meet to 40 truck quota, his incorrect painting of the sanitation lines, his authorizations of personnel changes without following proper protocol, his failure to bring pallets inside as instructed, his failure to clean his workstation immediately, his poor second performance review, his failed inventory audit, and his failure to correct employee time-punch errors. Thus, despite his evidence of good performance and his contestations of the cited examples of poor performance, the ample undisputed examples of his poor performance show that C&H's reasons are not pretextual.

Furthermore, the context suggests that the accusations of poor performance were not false or pretextual. Plaintiff Rey's poor performance was noted by multiple people besides Adams, including Landa, Peterson, and Bortolussi. None of these persons have been accused of age discrimination or retaliation. Moreover, his poor performance was documented before Adams was hired. Additionally, Adams is two years older than Rey, and six of the eight Warehouse Supervisors are over forty. An HR investigation by C&H found no evidence of age discrimination, and Rey can offer no other evidence besides the single remark by Adams. Rey's bare allegations of fabrication or prior good performance are not enough to show pretext.

Accordingly, defendants' motion for summary judgment is granted as to this claim.

### 2. Retaliation

In retaliation cases, the Court applies the same *McDonnell Douglas* three-step analysis, shifting the burden between the plaintiff and defendant. *Villiarimo*, 281 F.3d at 1064. To make out a *prima facie* case of retaliation, the plaintiff must show: "(1) involvement in protected activity opposing an unlawful employment practice, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse action." *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006).

For the first element, a plaintiff need only show that "the opposition is based on a *reasonable belief* that the employer has engaged in an unlawful employment practice." *Id.* (quoting *Moyo v. Gomez,* 40 F.3d 982, 984 (9th Cir.1994) (emphasis in original)). The law is clear that complaining about another

employee's discriminatory practices is a protected activity. *See O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996). Here, Rey argues that he engaged in a protected activity in March 2008 when he complained to HR about his belief that Adams was discriminating against him because of his age. He told HR about Adams's comment, "Hell . . . you're old," and the fact that Adams had moved him to an inventory position only four days later. Because Rey's belief was *reasonable* based on those facts, the first element is met. Plaintiff Rey also establishes the second element for a *prima facie* case of retaliation. When he was fired by C&H in October 2008, he suffered an adverse employment action.

In order to show a causal link between the protected activity and the adverse action, the plaintiff need only that establish knowledge by the employer and temporal proximity to make a *prima facie* case. *See Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003); *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1112 (2007). Then the burden shifts to the defendant to provide a legitimate, non-retaliatory reason for the adverse employment action. *See McDonnell Douglas Corp.*, 411 U.S. at 802; *Loggins* 151 Cal. App. 4th at 1112. If the employer meets its burden, then the burden returns to the plaintiff to establish that the reason was pretextual. *Id.*

Plaintiff Rey argues that he has established a *prima facie* case because Adams knew about the his complaint to HR and there is temporal proximity. He asserts that because Cronin conducted an investigation and asked Adams about his comment, Adams knew about the complaint. He also asserts a temporal proximity because he was fired seven months after the protected activity.

Even assuming that Rey can make a *prima facie* case of causation, C&H has provided a legitimate reason for firing Rey because of the many documented and undisputed instances of poor performance, some of which were documented before he complained to HR – indeed, before Adams was even hired as Warehouse Manager. Thus, Rey cannot establish that retaliation was the cause of C&H firing him.

Accordingly, defendants' motion for summary judgment is granted as to this claim.

### 3. Wrongful Termination

Rey argues that he has been wrongfully terminated because of age discrimination and unlawful

9

retaliation. However, Rey's wrongful termination claim fails because he cannot establish either a retaliation or a discrimination claim. Accordingly, defendants' motion for summary judgment is granted as to this claim.

### 4.     Failure to Prevent Discrimination and Retaliation

Similarly, Rey's claim that C&H has failed to prevent discrimination and retaliation is based on the same age discrimination and retaliation claims alleged in his first two causes of action, and fails for the same reason. Accordingly, defendants' motion for summary judgment is granted as to this claim.

### 5.     Intentional Infliction of Emotional Distress

The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the possibility of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993). To meet the first element, a defendant's conduct must be "so outrageous in character, and so extreme in degree, to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Villiarimo*, 281 F.3d at 1068.

Here, the Court finds that defendants' actions, although they might be considered offensive, are not sufficient to allow recovery for intentional infliction of emotional distress. *See King v. AC & R Advertising*, 65 F.3d 764, 770 (9th Cir. 1995) (finding defendant's age-related comments, while "offensive and perhaps discriminatory, were 'not so egregiously outside the realm of civilized conduct to give rise to actionable infliction of emotional distress'") (citation omitted); *see also Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996) (holding that the remedy for an unlawfully motivated personnel decision is an employment discrimination action, not an emotional distress suit). Because defendants' actions cannot reasonably be regarded as so extreme and outrageous as to permit recovery, defendants' motion for summary judgment is granted as to this claim.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion for summary judgment. (Docket No. 58).

**IT IS SO ORDERED.**

Dated: November 28, 2012

SUSAN ILLSTON
United States District Judge